**Judith GLICK, Plaintiff,**

v.

**UNITED STATES CIVIL SERVICE COMMISSION, et al., Defendants.**

Nos. 77 C 1458, 78 C 2753.

United States District Court,
N.D. Illinois, E.D.

July 28, 1983.

James P. White, Asst. U.S. Atty., Chicago, Ill., for plaintiff.

Martha Mills, Cotton, Watt, Jones, King, Bowlus, Chicago, Ill., for defendants.

## MEMORANDUM OPINION

PRENTICE H. MARSHALL, District Judge.

Plaintiff filed these consolidated cases in which she challenged her thirty day suspension and subsequent discharge as an employee of the United States Drug Enforcement Administration. On December 29, 1981 we granted plaintiff's motion for summary judgment in No. 78 C 2753, which

involved her discharge, set aside the discharge and remanded the case to the agency for determination of an appropriate back pay award. On January 26, 1982, we granted plaintiff's motion to reconsider the starting date for plaintiff's back pay award. On March 25, 1982, defendants appealed from the judgment. On December 14, 1982, the United States Court of Appeals for the Seventh Circuit remanded the case to this court for consideration of defendants' tender of full relief to plaintiff. On March 2, 1983 this court conducted a hearing and overruled plaintiff's objections to the tender. On May 5, 1983 final judgment was entered in both cases pursuant to defendant's tender.

Pursuant to the tender, plaintiff received a back pay award of $90,887.20 which constitutes backpay covering the period at issue in both suits, adjusted to give plaintiff the regular step increases in her compensation at the earliest dates she could have received them had she not been terminated. This sum, less an amount attributable to federal and state income taxes, has been tendered to the clerk of this court. Defendants also have tendered lump sum payments representing compensation for plaintiff's accumulated annual and sick leave. Plaintiff was also permitted to retire immediately from the civil service and begin to receive a pension. The total present value of the tender is approximately $240,000.

■ Plaintiff's attorney, Martha A. Mills, who has represented plaintiff at our request since January 9, 1979,[1] has presented a petition for an award of attorney's fees against defendants under the Equal Access to Justice Act ("EAJA"), 5 U.S.C. § 504, 28 U.S.C. § 2412(d) (Supp. V 1981). Ms. Mills seeks compensation for 205¾ hours which she expended on the cases, 2¼ hours spent by her partner Richard F. Watt, ½ hour spent by her partner John M. Bowlus, 22 hours spent by her associate Sue Anne Herrmann, 262¾ hours by her associate Stephen D. Froikin, 5¼ hours by a law clerk, and 8 hours by a paralegal.[2]

■ Under the EAJA, plaintiff may obtain attorney's fees unless the position taken by defendants was substantially justified. 28 U.S.C. § 2412(d) (Supp. V 1981).[3] Defendants do not contend that their decision to defend this litigation or their position on the merits was substantially justified; they concede that their decision to defend conduct that we ultimately held to be arbitrary and capricious makes an award under the EAJA appropriate.[4] Defendants do contend, however, that the "position" of the government through much of this case was that the case should be settled, that they were willing to concede liability here and hence their position was substantially justified.

■ The government contends that prior to the breakdown of settlement nego-

1. We doubted our authority to appoint counsel in this case. Furthermore, we had observed plaintiff's behavior and her hostile attitude toward three earlier counsel. We requested Ms. Mills to confer with plaintiff and suggested that plaintiff consult Ms. Mills. The result has been felicitous although, we are sure, extremely difficult for Ms. Mills.

2. Plaintiff, without benefit of counsel, has filed a pro se notice of appeal from our decision overruling her objections to defendants' tender and entering judgment on the tender. However, the notice of appeal does not divest us of jurisdiction to decide the attorney's fees question. *See Terket v. Lund,* 623 F.2d 29, 33–34 (7th Cir.1980).

3. Defendants do not dispute that plaintiff is a "prevailing party" eligible for an award under the statute. Defendants do contend that an

award may not be made for legal work done prior to October 1, 1981, the effective date of the EAJA. We reject this argument for the reasons stated in *Grand Boulevard Improvement Association v. City of Chicago,* 553 F.Supp. 1154, 1157–61 (N.D.Ill.1982). Moreover, while plaintiff *did not prevail* on all the claims made in No. 78 C 2753, defendants do not contend that this justifies a reduction in the attorney's fees plaintiff may receive under the EAJA. Thus, we are not asked to apply the principles of *Hensley v. Eckerhart,* —— U.S. ——, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983) to this case.

4. *See Grand Boulevard Improvement Ass'n v. City of Chicago,* 553 F.Supp. 1154, 1163 (N.D. Ill.1982).

tiations on October 23, 1980 it attempted to settle this case and did not defend the agency's conduct. However, the record contradicts that contention. Defendants refused to respond to plaintiff's discovery filed as soon as Ms. Mills appeared in this case, and filed an answer denying liability in March, 1980. If defendants did not wish to defend the agency's action in this case, then as soon as the case was filed, if not earlier, they should have done what they eventually did—tender to plaintiff what they believed to be full relief. Had defendants expeditiously settled this case they may well have avoided liability under the EAJA. *See Alspach v. District Director*, 527 F.Supp. 225, 229 (D.Md.1981). But they did not tender plaintiff any relief in 1980; at that point she continued to need judicial intervention in order to vindicate her rights. When the government forces an individual to resort to the courts in order to attack arbitrary governmental conduct its position is not substantially justified.

The Court draws instruction from parallel language in Fed.R.Civ.P. 37(a)(4). Under that Rule a court may require the losing party to a motion to compel discovery to pay attorneys' fees if that party was not "substantially justified" in opposing or making the motion. The Advisory Committee stated that this remedy was created to "deter the abuse implicit in carrying or forcing a discovery dispute to court when no genuine dispute exists." Likewise, the Act is intended to proscribe frivolous government action that forces a party to resort to the courts to redress its rights.

*Photo Data, Inc. v. Sawyer*, 533 F.Supp. 348, 352 n. 7 (D.D.C.1982) (citation omitted). In fact, if defendants concluded in 1980 that the agency's action was indefensible, yet went ahead and defended the action on the merits, forcing plaintiff to litigate and the court to decide plaintiff's motion for summary judgment, we might well con-

clude that an award of attorneys' fees was independently justified under 28 U.S.C. § 2412(b) (Supp. V 1981) which permits a court to award attorneys' fees against the United States when it litigates in bad faith. *See United States v. Burke*, 548 F.Supp. 724, 730–31 (D.S.D.1982).

As to the period after the court of appeals' remand we reach a different result. From that time on, defendants made no attempt to defend the agency's conduct but instead devoted their full efforts to settling the case. They promptly made a tender of full relief to plaintiff which we approved. Defendants' ultimate conduct in ending this litigation was commendable; this was not the sort of defense which should be penalized by an award of fees under the EAJA. Thus, we exclude from the EAJA award plaintiff's attorney's time after the remand except time spent preparing the fee petition, which is compensable in any event. We do not understand defendants to argue that time spent preparing the fee petition is not compensable.

■ Defendants also argue that the court should exercise its discretion under the EAJA to reduce the amount of fees to a prevailing party who "engages in conduct which unduly and unreasonably protracted the final resolution of the matter in controversy." 28 U.S.C. § 2412(d)(1)(C) (Supp. V 1981). The only conduct to which defendants refer is plaintiff's failure to accept their tender after the remand. This conduct did not unreasonably protract the litigation; a hearing was promptly held, plaintiff's objections were overruled and final judgment was entered. Moreover, we have already denied compensation under the EAJA for work performed after the remand so this argument has no practical significance.

Defendants argue that the number of hours for which plaintiffs seek compensation is excessive.[5] Excluding time after the

---

5. Defendants do not object to the inclusion of law clerk and paralegal time in the fee petition.

We have earlier held that compensation for the time of a student law clerk is available under

remand, Ms. Mills and her partners and associates seek compensation for 458 hours of legal work.

At the outset, we agree with Ms. Mills that plaintiff easily could have consumed 500 hours of attorneys' time. Plaintiff has been a very difficult litigant and must have been a very difficult client. Plaintiff is a confused, demanding, often irrational person who clearly has been emotionally involved in all the events surrounding this litigation. She has called our chambers on numerous occasions and refused to terminate her conversations with our staff, forcing them to hang up. She has come to our chambers numerous times and refused to leave until escorted out. She has appeared in court numerous times, with or without her attorney, and insisted on addressing the court until escorted out of the courtroom. We are confident that plaintiff was extremely demanding of her attorneys' time. Plaintiff went through three attorneys before we requested that Ms. Mills represent her; we agree with Ms. Mills that few attorneys would have stuck with that case as did Ms. Mills. For that we are grateful. Even difficult clients such as plaintiff have legal rights which should be vindicated. Ms. Mills enabled plaintiff to vindicate hers where most attorneys would have simply shrugged their shoulders and walked away.

■ All that said, we still agree with defendants that the hours claimed in the fee petition are excessive. The EAJA was designed to vindicate the public interest in challenging abusive governmental conduct. *See Grand Boulevard Improvement Association v. City of Chicago,* 553 F.Supp. 1154, 1162–63 (N.D.Ill.1982). Time spent coping with plaintiff's behavior hardly vindicates that public interest; the taxpayers should not be expected to assume costs related to

plaintiff's "eccentricities" rather than her attempt to force the government to obey the law. We agree with defendants that time spent by plaintiff's attorneys occasioned by plaintiff's behavior that was not productive in terms of advancing her position in this lawsuit may not be compensated under the EAJA. *Accord, Photo Data, Inc. v. Sawyer,* 533 F.Supp. 348, 353 (D.D.C. 1982).

This case was not legally complicated; the legal issues were straightforward. The case was factually complicated, however. The administrative record was voluminous and full of conflicting and confusing evidence. A lawyer would easily need several weeks to become sufficiently acquainted with the facts of the case to write a legal memorandum concerning it. Plaintiff's attorneys are entitled to be compensated for a substantial amount of time spent reviewing the record and briefing the case. Defendants do not argue otherwise. However, counsel are not entitled to be compensated under the EAJA for extensive, unnecessary conferences with their client. This was a paper case—review of an administrative record. In many ways, this case involved representation similar to that necessary in an appellate proceeding. Perhaps several days of conference with the client, supplemented by occasional conversations to tell plaintiff the status of the case, is all that would be reasonably necessary here. Thus, 24 hours of time spent by Ms. Mills and 10 hours spent by Mr. Froikin updating plaintiff on the status of her case after the initial conference conducted by Ms. Mills is all the time that should be compensated under the EAJA for client conferences. We have reviewed the fee petition and removed all remaining time devoted to client conferences.[6] What is left is 71¼ hours of compensable time spent by Ms. Mills, 2¼

the EAJA. *See Berman v. Schweiker,* 531 F.Supp. 1149, 1154–55 (N.D.Ill.1982). We look upon paralegal services somewhat differently. Our inclination is to regard them as part of the lawyer's overhead, covered by the lawyer's fee rate. Certainly paralegal time should not be assessed against a defendant at a "profit mak-

ing" rate, i.e. $50 per hour as has been requested here. We reject the claim for paralegal time.

**6.** Where notations on the fee petition make it impossible to determine whether specific portions of time were spent on legal work or client

hours of time spent by Mr. Watt, ½ hour spent by Mr. Bowlus, 22 hours spent by Ms. Herrmann, 212¼ hours spent by Mr. Froikin, and 5¼ hours of a law clerk's time.

Finally, we address the question of the appropriate hourly rate. The EAJA provides, "attorney fees shall not be in excess of $75 per hour unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee." 28 U.S.C. § 2412(d)(2)(A)(ii) (Supp. V 1981).

Ms. Mills sets her "medium" hourly rate at $100 per hour. The government objects to this rate, arguing that there are many other attorneys qualified to handle this case, so that no special circumstances exist justifying a rate higher than $75. Our earlier discussion of plaintiff's behavior refutes this position. The record in this case clearly demonstrates that few attorneys would have tolerated plaintiff. Nevertheless, we agree for the reasons stated above that the taxpayers should not absorb the cost of plaintiff's behavior. No contention is made that there are a limited number of attorneys with the technical expertise to handle a case such as this, nor do plaintiff's attorneys document their assertion that the cost of living justifies a rate higher than $75 per hour. No court has ever awarded more than the statutory rate, adjusted for inflation, and in the absence of a very compelling showing the statutory rate should be employed. *See Tyler Business Services, Inc. v. NLRB,* 695 F.2d 73, 77 & n. 17 (4th Cir.1982).

The statutory rate is also appropriate for plaintiff's other attorneys, except for Mr.

Froikin, who has less experience than the others, and whose hourly rate is usually set at less than $75. Sixty dollars per hour is an appropriate rate for Mr. Froikin's time.

In sum, plaintiff's award under the EAJA is as follows. 71¼ hours of Ms. Mills' time at $75 per hour or $5,343.75; 2¼ hours of Mr. Watt's time at $75 per hour or $168.75; ½ hour of Mr. Bowlus' time at $75 per hour or $37.50; 22 hours of Ms. Herrmann's time at $75 per hour or $1,650.00; 212¼ hours of Mr. Froikin's time at $60 per hour or $12,735.00 and 5¼ hours of a law clerk's time at $55 per hour or $288.75. Plaintiff also seeks $786.26 in costs and expenses, a request to which defendants do not object.[7] There being no just reason for delaying entry of final judgment, the clerk is expressly directed to enter judgment in favor of plaintiff and against defendants in the sum of $21,010.01, payable directly to plaintiff's attorneys. Fed.R.Civ.P. 54(b).

Plaintiff's attorneys also request that to the extent that we do not compensate them for all of their time under the EAJA, we order plaintiff to compensate them out of her recovery. Soon after we requested that Ms. Mills represent plaintiff, she approached plaintiff and requested that plaintiff sign a fee agreement to pay her attorneys one-third of any recovery obtained through their representation of her.[8] Plaintiff refused to sign the agreement and Ms. Mills' subsequent representation of her was without any fee agreement.

█ The threshold question which we face is whether we have jurisdiction to order plaintiff to compensate her attorneys. This dispute is in essence a contract claim between citizens of the same state. If independently brought in this court it would be

---

conferences, we have allocated those portions to client conferences. Plaintiffs' attorneys have the burden of keeping records that are detailed enough so that we may determine whether specific portions of time are compensable. *See Hensley v. Eckerhart,* —— U.S. ——, —— & n. 12, 103 S.Ct. 1933, 1941 & n. 12, 76 L.Ed.2d 40 (1983). *See also* id. at ——— ——, 103 S.Ct. at 1943 (Burger, C.J., concurring).

7. Costs and expenses may be awarded against the United States under 28 U.S.C. § 2412(a) (Supp. V 1981).

8. At that time, the EAJA had not yet been enacted and therefore Ms. Mills had no hope of compensation unless she could reach some sort of fee agreement with plaintiff.

clear that there would be no federal jurisdiction to entertain it.[9] However, it has long been recognized that where a controversy arises which "has direct relation to property or other assets actually or constructively drawn into the court's possession or control by the principal suit," there is federal jurisdiction over the controversy. *Fulton National Bank v. Hozier,* 267 U.S. 276, 280, 45 S.Ct. 261, 262, 69 L.Ed. 609 (1925). *See Aldinger v. Howard,* 427 U.S. 1, 9–12, 96 S.Ct. 2413, 2418–19, 49 L.Ed.2d 276 (1976). Here, plaintiff's recovery has been paid into a registry maintained by the clerk of this court and hence the court is in control of the funds plaintiff's attorneys seek. Since the fund to which plaintiff's attorneys lay claim is in the court's possession, we have jurisdiction to entertain this dispute between plaintiff and her attorneys over the attorneys' compensation. *See Rosquist v. Soo Line Railroad,* 692 F.2d 1107, 1110 (7th Cir.1982); *Grimes v. Chrysler Motors Corp.,* 565 F.2d 841 (2d Cir.1977) (per curiam); *Cappel v. Adams,* 434 F.2d 1278 (5th Cir.1970); *Garrett v. McCree,* 201 F.2d 250, 253–54 (10th Cir.1953); *Moore Bros. Constr. Co. v. City of St. Louis,* 159 F.2d 586, 588 (7th Cir.1947); *Andrews v. Central Surety Insurance Co.,* 295 F.Supp. 1223, 1227–29 (D.S.C.1969). We therefore hold that we have jurisdiction to adjudicate this controversy to the extent it involves funds in the court's possession.[10]

Plaintiff's attorneys argue that they should be awarded one-third of the value of plaintiff's recovery, or some $79,000, less their recovery under the EAJA. That would have the effect of binding plaintiff to a fee agreement which she did not sign. Plaintiff and her attorneys clearly had no contract; that being the case, her attorneys cannot be entitled to a contractual recovery. Rather, the law governing this situation is clear. Where an attorney and her client have no express fee agreement, the attorney may recover only the reasonable value of the services rendered to the client in quasi-contract or quantum meruit. *See Greenbaum & Browne, Ltd. v. Braun,* 88 Ill.App.3d 210, 43 Ill.Dec. 303, 410 N.E.2d 303 (1980); *Slater v. Jacobs,* 156 Ill.App.3d 636, 14 Ill.Dec. 1, 371 N.E.2d 1054 (1977); *Neville v. Davinroy,* 41 Ill.App.3d 706, 355 N.E.2d 86 (1976); *In re Estate of Bort,* 75 Ill.App.2d 322, 221 N.E.2d 24 (1966); *Sullivan v. Fawver,* 58 Ill.App.2d 37, 206 N.E.2d 492 (1965).

Plaintiff has objected to our consideration of her attorneys' request at this time. She has filed two motions, one a "Motion to Stay Petitioner's Martha A. Mills Petition for Fees and Expenses, Court Appoint At-

---

**9.** While the parties do not raise this question, we may consider federal subject matter jurisdiction on our own motion. *See* Fed.R.Civ.P. 12(b)(1). It is true that plaintiff and Ms. Mills signed a letter agreeing to have this dispute resolved by the court. However, if this court lacks subject matter jurisdiction, the parties' agreement to submit the dispute to the court cannot remedy that defect. *See Broughten v. Voss,* 634 F.2d 880, 883 (5th Cir.1981). *See generally, e.g., California v. LaRue,* 409 U.S. 109, 112 n. 3, 93 S.Ct. 390, 394 n. 3, 34 L.Ed.2d 342 (1972); *Neirbo Co. v. Bethlehem Shipbuilding Corp.,* 308 U.S. 165, 167, 60 S.Ct. 153, 154, 84 L.Ed. 167 (1939).

**10.** While plaintiff's recovery has been paid into the clerk's registry, and apparently has not been withdrawn by plaintiff, there appears to be no legal obstacle to her doing so; to our knowledge Ms. Mills and her colleagues have not asserted any type of attorneys' lien or other interest that would prevent plaintiff from withdrawing the funds. Nevertheless, to our knowledge plaintiff has not claimed any of the funds, perhaps because of her desire to appeal our decision accepting defendants' tender. If plaintiff does withdraw the funds from the court's possession, our jurisdiction over this dispute would be at an end, at least under the law in this circuit. *Compare Taylor v. Kelsey,* 666 F.2d 53 (4th Cir.1981) (per curiam); *Bounougias v. Peters,* 369 F.2d 247 (7th Cir.1966), *cert. denied,* 386 U.S. 983, 87 S.Ct. 1288, 18 L.Ed.2d 232 (1967); *and Minersville Coal Co. v. Anthracite Export Ass'n,* 55 F.R.D. 429 (M.D. Pa.1972) *with Jenkins v. Weinshienk,* 670 F.2d 915, 918 (10th Cir.1982); *Iowa v. Union Asphalt & Roadoils, Inc.,* 409 F.2d 1239 (8th Cir. 1969); *National Equip. Rental, Ltd. v. Mercury Typesetting Co.,* 323 F.2d 784 (2d Cir.1963); *American Fed. of Tobacco-Growers, Inc. v. Allen,* 186 F.2d 590 (4th Cir.1951) (per curiam); *In re Coordinated Pretrial Proceedings in Antibiotic Antitrust Litigation,* 520 F.Supp. 635 (D.Minn.1981); *Jersey Land & Dev. Corp. v. United States,* 342 F.Supp. 48 (D.N.J.1972); *and City of Hankinson v. Otter Tail Power Co.,* 294 F.Supp. 249 (D.N.D.1969).

torney to Respond to Said Petition, Which Plaintiff Deems Required and Warranted in the Interests of Justice," and the second a "Motion for Leave to Proceed In Forma Pauperis, for Appointment of Legal Counsel, and an Extension of Considerable Time (at Least 180 Days) for Court Appointment Attorney, When Subsequently Being Appointed by the Court, to File a Brief Directed to the United States Court of Appeals for the Seventh Circuit."

 Plaintiff's appeal divests this court of jurisdiction to consider her motion that an attorney be appointed to write a brief on her behalf in the court of appeals. It is denied for lack of jurisdiction. Plaintiff should direct that motion to the court of appeals. The same is true of her request that she be permitted to proceed in forma pauperis in the court of appeals.[11]

Because of plaintiff's recovery in this action we can no longer say that she is unable to pay fees and costs. In light of defendants' deposit with the clerk of this court, plaintiff is now a person of some means. As a result, we lack authority to appoint an attorney for her under 28 U.S.C. § 1915(d) (Supp. V 1981), or any other statute of which we are aware. If plaintiff wants an attorney to represent her, she should hire one.

We are not adverse to granting plaintiff a period of time to attempt to retain an attorney. We do think it would be useful, however, to indicate our tentative view on Ms. Mills request for fees. We are convinced that plaintiff used significant amounts of her lawyers' time on unproductive client conferences. Our own staff has spent significant amounts of time trying to cope with plaintiff's numerous visits and telephone calls. To avoid unjust enrichment, plaintiff should compensate her attorneys for the reasonable value of the time which she demanded they expend. In the context of this case, the reasonable value of the services should be the same as that utilized in our award of fees against the defendants. It would be anomalous for plaintiff's attorneys to be paid at one rate

by defendants and at another by plaintiff. Thus, we intend to compensate plaintiff's attorneys for the time they spent communicating with plaintiff for which they have not been compensated by defendants. That amounts to a total of 152½ hours of Ms. Mills' time at $75 per hour or $10,087.50, and 59½ of Mr. Froikin's time at $60 per hour or $3,030. The total compensation plaintiff owes her attorneys would therefore be $13,117.50.

While the preceding represents our view of plaintiff's obligations, we will not enter judgment until plaintiff has had an opportunity to respond. Plaintiff may file a written response within 30 days. The court will not grant plaintiff any additional extension of time. In all other respects, plaintiff's motion to stay is denied.

---

**11.** In fact, it appears that plaintiff has filed these motions in the court of appeals as well as     in this court.